In the Matter of Sharyn Nixon FOGLER.

(301 S. E. (2d) 560)

## ORDER

April 6, 1983.

The records in the office of the Clerk of The Supreme Court show that, on May 11, 1977, Sharyn Nixon Fogler was admitted and enrolled as a member of the bar of this State.

In a letter addressed to The South Carolina Bar, dated February 4, 1983, Sharyn Nixon Fogler requested that her resignation be accepted. Sharyn Nixon Fogler's letter is made a part of this Order. Ms. Fogler also confirmed her resignation to the South Carolina Supreme Court.

*It is, therefore, ordered* that the resignation of Sharyn Nixon Fogler be accepted. She shall forthwith, within five days, deliver to the Clerk of The Supreme Court her Certificate of Admission to practice law in this State, and her name shall be stricken from the roll of attorneys.

2606 Skylark Drive
Wilmington, Delaware 19808

February 4, 1983

South Carolina Bar
1321 Bull Street
P. O. Box 11039
Columbia, S. C. 29211

Attn: Robert N. Durant
    *Executive Director*

Dear Mr. Durant:

I hereby submit my resignation from the South Carolina Bar.

In May of 1977 I was admitted to practice in the Courts of South Carolina. The following August, never having practiced law or worked at all in South Carolina, I left the state. Here, in Delaware, I am now trying to resume my career as an attorney. In view of the distance which separates us, I do not anticipate practicing before the Courts of South Carolina, nor do I see how I could participate in the activities of the Bar to our mutual benefit.

In April of 1979 I was suspended for failure to pay my license fees and dues, however, and the question arises whether the Supreme Court will accept my resignation while I remain in this status. I understand that you will refer this question to the Supreme Court and advise me of their decision.

It greatly distressed me to accept the suspension, as, I assure you, it contravenes my respect for the Bar and my professional responsibilities. I never intended to neglect my obligations to the Bar; rather other obligations, to my family, seemed more immediate. I have always been painfully mindful of my suspension.

After graduation from the University of Maryland School of Law in June of 1973, and admission to practice in Virginia in February of 1974, I worked in Virginia as an attorney until December of 1975, when I moved to Maryland to join my husband who was living there. My husband, a civil engineer, took a job with Carolina Power and Light Company, and we moved with our three (3) month-old son to South Carolina in September of 1976. With every intention of resuming my career, I sat for the February 1977 Bar Examination and was admitted to practice the following May.

Two months later, however, my husband was transferred by his employer to North Carolina. In November of 1977, I delivered our second child. Since I still had plans to return to work, I wanted to continue my membership in the bar of the neighboring state, of course, and my husband paid my 1978 dues to the South Carolina Bar. I even filed a preliminary application to take the North Carolina Bar Examination eighteen (18) months thereafter.

In December of 1978, however, my husband accepted a job in Delaware, and our family moved here. By now I was thoroughly immersed in the role of full-time mother — and weary of false starts. I decided to postpone my career to some indefinite time in the future when my children were older and my husband could share my commitment to getting back to work. Without any income of my own, faced with expenses of raising a family, I could no longer justify to my husband professionally related expenses. (He has, however, agreed each year to pay my license fees to Virginia, where I remain in a much less expensive associate status.)

After several anxious phone calls to the offices of the Bar in early 1978, I decided to suffer the suspension rather than resign. I understood that it was possible (not promised) that if I returned to South Carolina in the not too distant future my license might be reinstated if I paid my delinquent license fees. I trust that anyone who has been through the ordeal of a bar examination can understand how reluctant I was to relinquish the privilege of practicing law. I still had hopes of working again someday, and in view of my husband's history of job moves, there was always the possibility that I could persuade him to look favorably on some job offer in South Carolina in the future.

By this time last year, we had lived in Delaware all of three (3) years. Both my children are in school and inflation had aroused in my husband all manner of encouragement for my returning to work. I sat for the Delaware Bar Examination last July, and to my delight, passed it. I am now trying to find a position which will satisfy the Bar Examiners' requirement of a five (5) month full-time clerkship so that I can be admitted to practice.

Now that I have undertaken to resume work as an attorney here in Delaware, I certainly have no reason to allow this status of suspension to continue. For the reasons I have given, I would like to resign, and my resignation now would, of course, bring this professionally embarrassing situation to an end.

Very truly yours,

/s/ Sharyn Nixon Fogler